## COMMONWEALTH vs. ZACHARIAH B. PORTER.

t is the duty of the court to give instructions to the jury on all questions of law which arise in a cause tried by them; and it is the duty of the jury to receive the law from the court, and to conform their judgment and decision to such instructions, in applying the law to the facts to be found by them: To this duty jurors are bound by a strong social and moral obligation, enforced by the sanction of an oath, to the same extent and in the same manner as they are conscientiously bound to decide all questions of fact acccording to the evidence.

But, in a criminal case, a defendant has a right, in Massachusetts, by himself or his counsel, to address the jury, under the general superintendence of the court, upon such questions of law as come within the issue to be tried.

IN an indictment against the defendant on the Rev. Sts. *c.* 47, §§ 1, 2, the first count alleged that on the 1st of April 1843, and on divers days afterwards, at Cambridge, " he, being first duly licensed then and there as an innholder, but without authority to sell any intoxicating liquor in or about his house or other buildings, and without any license or authority therefor duly had and obtained according to law, did then and there presume to be and was a common seller of wine, brandy, rum and other spiritous liquors, the same being then and there intoxicating liquors, to be used in and about his house in said Cambridge." Other counts charged the defendant, in different forms, with selling intoxicating liquors, without being first duly licensed.

At the trial in the court of common pleas, before *Mer-*

*rick,* J. the prosecuting officer introduced record evidence that the defendant had been licensed according to *St.* 1837, *c.* 242, § 2, " to keep an inn, without authority to sell any intoxicating liquor." He also introduced evidence that the defendant had sold intoxicating liquors.

The defendant's counsel contended that the license which was given in evidence was an authority to the defendant to do the acts and make the sales alleged and charged in the indictment, and was a sufficient and legal justification, on his part, for making those sales and doing those acts. The counsel was proceeding to argue to the jury that such was the true construction of the statute, and the legal effect of said license, when he was stopped by the court. The court afterwards ruled, on argument, that the proposition stated by the defendant's counsel was purely a question of law, and as such was to be decided by the court, and not by the jury ; and the court thereupon ruled that the said license did not authorize the defendant to make the sales and to do the acts charged in the indictment, and was no justification to him therefor.

The defendant's counsel then contended that the words " without authority to sell any intoxicating liquor," inserted in the record of the defendant's license, were surplusage, and ought to be rejected as such, and that, upon and after such rejection, the said record showed that the defendant was duly licensed as an innholder, whereby he obtained and had authority to do said acts and make said sales, as charged in the indictment. The counsel being about to argue to the jury in support of this proposition, he was again stopped by the court, and the court ruled that this was also a question of law, to be decided by the court, and not by the jury, and thereupon, after argument, further ruled that the said words were not to be rejected as surplusage, and that said license was not sufficient to justify the defendant in being a common seller of spiritous liquors to be used in his house, as charged in the indictment.

The defendant's counsel contended, and was proceeding to

argue to the jury, that § 1, of *c.* 47 of the Rev. Sts. was, by necessary implication, repealed by *St.* 1837, *c.* 242 ; the provisions of the latter statute being incompatible with those of the former. He was again stopped by the court; and the court ruled (as before) that this was a question of law, &c. and after argument, further ruled that said section was not so repealed, but remained in full force. And the court further ruled that the several questions, having been ruled and decided by the court, as aforesaid, were not open questions to the jury ; that no appeal could be allowed from the court to the jury, upon these several rulings and decisions of the court; and that therefore the defendant could not be permitted, by himself or his counsel, to argue these questions to the jury, for the purpose of inducing them to overrule or reverse these several rulings and decisions of the court.

The defendant's counsel, in closing the defence, contended that the jury were not bound by the aforesaid several rulings and decisions of the court, but that they had the right, in rendering their verdict, to disregard and overrule them ; and he was proceeding to argue to the jury, *first*, that they had the right to determine the law, and decide all the said several questions of law, ruled and determined by court, as aforesaid ; and *secondly*, that said several rulings of the court were incorrect and erroneous. He was then interrupted and stopped by the court, and the court ruled that it was the duty of the jury, for the purposes of the present trial, to adopt and follow the said several rulings and decisions of the court, as the settled law applicable to this case ; and that, if there was any error or mistake in any of the said rulings or decisions of the court, the proper remedy of the defendant was by suitable motions or proceedings in that court, at a subsequent stage of the cause, or by exceptions duly taken according to law, or such other legal proceedings as might be found to be suitable and appropriate, whereby all the said several matters and questions of law could be subjected to the revision of, and correction by, the supreme court. And thereupon the court refused to permit the defendant, by himself or by his

counsel, to argue to the jury that they had the right to de-
termine and decide the said several questions of law, or that
the said several rulings and decisions of the court were incor-
rect or erroneous.

The judge instructed the jury (among other things) that
it was their duty to adopt and follow the said several rulings
and decisions of the court, for the purposes of the trial.  But
he stated to them that they occupied an independent posi-
tion, and, being required to return only a general verdict,
they possessed the power of rendering a verdict in opposition
to the said rulings and decisions, whereby they would be in
fact overruled and reversed ; and that, if the jury should do
so, in violation of what the court had thus prescribed as the
rule of their duty, they would in no way be amenable to
punishment by the law, or responsible, in any form, to any
legal accusation or animadversion, for such proceeding.

After the court had finished the charge to the jury, the
defendant's counsel requested that the following addition
might be made to the instructions :  " In criminal cases, the
jury are to pass upon the whole matter of law and fact, and
to render a verdict of guilty or not guilty, upon the whole
matter, embracing all questions of law and fact."  But the
court declined making any addition to the instructions al-
ready given to the jury.

The jury found the defendant guilty on one count in the
indictment, and he alleged exceptions to all the foregoing
rulings and decisions of the court.

This case was argued at the last October term.

*Hallett & Nelson*, for the defendant.   The court cannot
compel a jury to find a special verdict.   How then can a
jury be compelled to find a verdict according to the court's
views of the law ?   A general verdict cannot be revised ; and
no attaint lies.   " It is the right of juries, in criminal cases, to
give a general verdict of acquittal, which cannot be set aside
on account of its being contrary to law ; and hence results
the power of juries to decide on the law, as well as on the
facts in all criminal cases."  Per Chase, J. 1 Chase's Trial, 34

S. P. *State* v. *Snow*, 6 Shepley, 346. *State of Georgia* v *Brailsford*, 3 Dall. 4. *Commonwealth* v. *Knapp*, 10 Pick. 496. Per Putnam, J. 13 Pick. 550, 551. Per Parsons, C. J. 4 Mass. 25. *Warren* v. *The State*, 4 Blackf. 150. *U. States* v. *Wilson*, 1 Bald. 108. Per Kent, J. 3 Johns. Cas. 366 – 371, and cases there cited. Per Morton, J. 20 Pick. 222, 227. 2 Hawk. *c.* 47, § 12. 7 Dane Ab. 336. 2 Wilson's Works, 372. *Bushell's case*, Vaugh. 143 *& seq.* Stanhope's Rights of Juries, 19 – 33, 55 – 64, 126 – 131. Lit. § 368. 2 Swift's Syst. (ed. of 1822) 412.

The oath of jurors, in criminal cases, is well and truly to try the issue *according to their evidence ;* in civil cases, it is to give a true verdict, *according to the law and the evidence given them.* Rev. Sts. *c.* 137, § 7. *St.* 1807, *c.* 140, § 14. Anc. Chart. 144. This difference supports the ground taken for the defendant. By *St.* 1807, *c.* 140, § 15, it was made the business of the traverse and petit juries to decide, at their discretion, " by a general verdict, both the fact and the law involved in the issue." See also *Inhabitants of Mendon* v. *County of Worcester*, 10 Pick. 235. *Stone* v. *Crocker*, 24 Pick. 84.

*Huntington,* (District Attorney,) for the Commonwealth. The question now raised has never been decided in this Commonwealth ; but the nature of our institutions, our whole legislation, and the practice of our courts, disprove the right of a jury to decide questions of law.

Our constitution was avowedly framed for the purpose of establishing " a government of laws, and not of men ; " a government of " standing laws ; " and to secure " an impartial interpretation of the laws " by " judges " holding their " offices as long as they behave themselves well." Our judicial tribunals are not so absurdly constituted as necessarily to bring the court and jury into conflict, and thus to defeat all the ends of justice. Per Durfee, C. J. Dorr's Trial, 121, 122.

Our legislation also shows that the court only is to judge of the law in criminal as well as civil cases. By Rev. Sts. *c.* 81,

§§ 27 – 29, and *c.* 138, § 11, a person convicted of an offence, if aggrieved by any opinion, direction or judgment of any single justice of the supreme court, or of the court of common pleas, may allege exceptions and take the judgment of the full bench of the supreme court on such matter of law.  So when the judge of the court of common pleas, on a criminal trial, may deem a question of law to be doubtful, he may present such question to the supreme judicial court for decision.

If juries are judges of any part of the law, they are judges of the whole.  They may refuse to consider evidence which the court allows to be given to them, on the ground that it is not legal evidence; and they may give effect to matter which the court excludes, on the ground that it ought to have been admitted.

In *U. States* v. *Battiste*, 2 Sumner, 243, Story, J. says, " the jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case tried upon the general issue.  In each they have the physical power to disregard the law as laid down to them by the court.  But I deny that in any case, civil or criminal, they have the moral right to decide the law according to their own notions or pleasure.  It is the duty of the jury to follow the law, as it is laid down by the court.  If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views which different juries might take of it, but in case of error, there would be no remedy or redress by the injured party ; for the court would not have any right to review the law, as it had been settled by the jury."  The same doctrine is laid down in *Montee* v. *The Commonwealth*, 3 J. J. Marsh. 150 ; by Durfee, C. J. in Dorr's Trial, 121, 122, 130 ; and by Scott and Holman, Js. in *Townsend* v. *The State*, 2 Blackf. 158.  In the latter case, it is said that, if the jury find the law contrary to the instructions of the court, they thereby violate their oath.  See also 4 Bl. Com. 361. 4 Stephen's Com. 432.  Foster, 256.  *Montgomery* v. *The State*, 11 Ohio, 427.  *Pennsylvania* v. *Bell*, Addison, 160

*Kelton* v. *Bevins,* Cooke, 107. In the case of *The King* v. *Dean of St. Asaph,* 3 T. R. 431, *note,* Lord Mansfield says, the jury "do not know, and are not presumed to know the law ; they are not sworn to decide the law ; they are not required to do it. Upon the reason of the thing, and the eternal principles of justice, the jury ought not to assume the jurisdiction of the law. They do not know, and are not presumed to know any thing of the matter. It is the duty of the judge, in all cases upon general issues, to tell the jury how to do right, though they have the power to do wrong, which is a matter between God and their own conscience. To be free, is to live under a government by law. Miserable is the condition of individuals, dangerous is the condition of the State, if there is no certain law, or (which is the same thing) no certain administration of law, to protect individuals, or to guard the State." See also 3 Johns. Cas. 405, per Lewis, C. J. Worthington on Power of Juries, 120, 125, 173. Eunomus, Dial. 3, § 53. 2 Hume Crim. Law, (2d. ed.) 423.

In *Hardy* v. *The State,* 7 Missouri Rep. 607, a jury, who were told by a subordinate court that they were the judges of the law and of the evidence, found the defendant guilty, and the court passed judgment upon him. The supreme court reversed the judgment, for this misinformation given to the jury.

As the jury have only the power, without the right, to decide questions of law against the instructions of the court, it seems to follow that counsel should not be permitted to argue to the jury against the correctness of those instructions. And so it was held in *Davenport* v. *The Commonwealth,* 1 Leigh, 588 ; in *Commonwealth* v. *Garth,* 3 Leigh, 761 ; and in Dorr's Trial, 77, 81, 82.

*Hallett,* in reply. It is admitted on all hands, that the jury have the *power* to determine the law as well as the fact of the case ; "and if the law gives them the power it gives them the right also. Power and right are convertible terms when the law authorizes the doing of an act which shall be final, and for the doing of which the agent is not responsible." Such was Mr. Hamilton's argument in the *People* v. *Croswell,*

23 *

3 Johns. Cas. 345, and such was the opinion of Blackford, J in *Townsend* v. *The State*, 2 Blackf. 163. To admit that the jury have the power, unrestrained by law, but have not the right to use the power which the law gives them, is to assume that the jury, in the exercise of a lawful power, will do wrong, or that the law is wrong in giving them the power. The law will not permit a wrong to be done, and therefore, if it empowers the jury to pass upon the law in the exercise of their judgment, it is no more to be assumed that they will do wrong, than that the judge will do wrong in the use of his judgment and discretion, where he is unrestrained. The juror, being sworn to try the issue, must find his verdict upon his own conviction and conscience. " A man cannot see by another's eye, nor hear by another's ear. No more can a man conclude or infer the thing to be resolved by another's understanding or reasoning." Per Vaughan, C. J. Vaugh. 148.

It is not contended, as is assumed for the prosecution, that the jury are judges of the law distinct from the facts of the case, or that they decide or settle points of law, as precedents in other like cases; but that "upon all general issues, as upon not culpable pleaded, the jury find upon the issue to be tried, wherein they resolve both law and fact, complicately, and not the fact by itself; so as, though they answer not singly to the question what is the law, yet they determine the law in all matters where issue is joined and tried." Per Vaughan, C. J. Vaugh. 150. And to the same effect is the opinion of Parsons, C. J. in *Coffin* v. *Coffin*, 4 Mass. 25. " The issue involves both law and fact, and the jury must decide the law and the fact. To enable them to settle the fact, they are to weigh the testimony; that they may truly decide the law, they are entitled to the assistance of the judge." Why to the " assistance," if they are bound to take his opinion without question ? To this point is the provision in Rev. Sts. *c.* 95, § 32, that when a jury cannot agree on a verdict, " after thorough deliberation, the court may state anew the evidence, and explain to them anew the law applicable to the case." But why should the court explain, and why should the jury deliberate, if they

must implicitly take the law from the court? And this view of the rights of juries is fully sustained in *Commonwealth* v. *Knapp,* 10 Pick. 496, and by Shaw, C. J. in *Commonwealth* v. *Kneeland,* 20 Pick. 222.

The plea of not guilty includes both law and fact, and so does the verdict on that issue. The jury are not to find the naked fact only, but, in a verdict of guilty or not guilty, they must find the criminal fact; for if the fact be not criminal, no guilt is incurred, and a verdict of guilty, though the fact be proved, would be false. *Rex* v. *Woodfall,* 5 Bur. 2661. It follows, that, to make a whole verdict, the jury must find the conclusion of law upon the facts, and the court cannot enforce the conclusion of law, to make the verdict, unless the jury find it; and if they do not find the conclusion of law upon their own conviction and understanding, but take it from the court, then the verdict is not theirs, on their oaths, but is only in part theirs, and the rest is taken, or is enforced upon their consciences, against their conviction and judgment.

So if the jury are to take the law from the court, against their conviction, then there is no difference between a general and a special verdict. The latter finds the fact merely, and leaves the law to be applied by the judge, after the jury return into court. But if the jury are bound to take the law from the court, then the only difference is, that in a general verdict they take the law with them, as laid down by the judge, when they retire to deliberate, and after finding the fact, make up their verdict as the judge would make it if they returned into court with a special verdict as to the fact only. Who then shall give the verdict in a criminal matter compounded of law and fact? the jury or the judge? or shall it be divided between them? as the argument against the rights of jurors must assume.

The withholding of power from the court to alter or control a verdict of not guilty, in criminal causes, though against the opinion of the judge, is of itself conclusive in favor of the power of the jury, and of their right to exercise the power independently of the judges. Else, why does not the law restrain the power

in criminal trials, as it does in civil ?   In the latter, at common law, and by Rev. Sts. *c.* 82, § 19, the court may control the verdict by setting it aside as often as found against their opinion, either as to law or fact.    But in all issues to a jury, involving a criminal fact, the citizen shall not be convicted but " by the judgment of his peers."   Bill of Rights, Art. 12. It must therefore be the judgment of the jury which makes the whole verdict, and not the judgment of the judge, either as to fact or law.   And no person acquitted by a jury shall be held to answer again for the same offence.   Rev. Sts. *c.* 123, § 4.

Nor is it a sound objection that the defendant goes to the court for a new trial, if the jury find him guilty against the opinion of the judge ; for his right *in favorem vitæ* is first, perfect immunity by a verdict of not guilty ; and second, a new trial, in the legal discretion of the court, if the verdict is against him. Neither is there any conflict between the court and the jury, in their functions.   The verdict, if guilty, may be set aside, if against the opinion of the judge.   If not guilty, it is conclusive, in that issue, on the law and on the fact ; and the judge cannot inquire whether the jury agreed with him on the law, any more than he can so inquire as to the fact.

And so of the objection that, if juries do not take the law implicitly from the judge, there will be uncertainty in verdicts. It will be no more so than from the opposite verdicts which different juries may give on a like state of facts.   But this objection begs the argument, because, if the jury have the right by law, it is not for the court to restrict or deny it, for fear of consequences which the law does not apprehend nor provide against.

If precedent is to govern, it is conclusive on the point as to our common law.   There was no practice in England adverse to this right of juries, prior to the adoption of our state constitution ; and the practice of all our judges (until the excitement growing out of the license causes) has been to instruct the jury that, " in all criminal cases, the jury are to pass upon the whole matter of law and fact, and to render a ver-

dict of guilty or not guilty upon the whole matter, embracing all questions of law and fact." 20 Pick. 222. The defendant has a right to a trial by jury as it existed at the adoption of the constitution, (*c.* 6, § 6,) according to the laws theretofore adopted, used and approved in the colony. Up to that time, the English common law fully recognized this right, without question. In Care's English Liberties, (Boston ed. 1721,) 201, 202, it is said, " the office and power of these juries is judicial; from their verdict there lies no appeal; by finding guilty or not guilty, they do complicately resolve both law and fact." And so far was the right carried in our colonial practice, that the jurors, if not clear in their judgments, might, in open court, advise with any man they thought fit, to resolve them. Anc. Chart. 145.

The anomalous cases of libel, under Lord Mansfield, were decided after the adoption of our constitution, and were made a state question between the government and the liberty of the press. 3 T. R. 428, *note.* But even in libel causes, and long after such offences reverted from the star chamber to the court of king's bench, "no doubt seems to have been entertained of the right of a jury to give a general verdict in the case of libel as well as in any other criminal proceeding." Stark. on Slander, (1st ed.) 617. In all cases but these, the doctrine that, in a criminal trial, the jury, on the plea of not guilty, may determine the law and the fact of the case, has been supported, or not denied, by every English judge, except Chief Justice Jeffries, in the trial of Sidney. 3 Hargrave's State Trials, 805.

In *U. States* v. *Battiste,* 2 Sumner, 243, which is the only case of authority in this country, cited on the other side, the judge denied " the *moral* right of the jury to decide the law according to their own notions and pleasure." If he meant *wilfully and wantonly,* it is well said; but if it mean that the juror is to give his verdict against his own conviction, because the judge tells him so to do, then is the juror compelled to do morally wrong, and even "though the verdict be right the jury give, yet they, not being assured it is so from

their own understanding, are foresworn, at least in *foro con-scientiæ.*" Per Vaughan, C. J. Vaugh. 148. But in the case of *U. States* v. *Battiste*, the judge carefully explained and reasoned the law, and so put it to the jury, which could not be necessary, and might tend to confuse, if they were bound implicitly to take the point of law from him. Nor is it well founded to say that the jury cannot comprehend the law. It is to disparage their office, as well as to impugn the law, which does not assume incapacity where it imposes duties to be performed. Neither does the law involve itself in the absurdity which this objection would fasten upon it; for while it holds as a maxim that every man, when tried, is presumed to know the law, it does not, at the same time, assume that the jurors who are to try him are to be presumed ignorant of the law.

The result would seem to be, that the power carries with it the right; that if it be exercised, against the opinion of the court, to convict, the remedy is with the court to set aside the verdict. If it be used to acquit, it must be a strong or extreme case; and in all such, by the whole theory of the institution of jury trial, the jury are a safer deposit of popular rights, in a free government, than a court that is irresponsible for its judgments, however wrong, if not corruptly given. And so far from there being danger to law from the exercise of this power, it is worthy of remark, that juries have always been in the right, on fundamental questions of liberty, where they have determined the law of the case against the opinion of the judge. See 2 Hutchinson's Hist. of Mass. 62. 1 Chandler's Crim. Trials, 143, 149, 153, 269, 288. *Zenger's case,* 17 Howell's State Trials, 675–724.

On the other point in the exceptions, the right of counsel to argue to the jury the points of law involved in the issue of a criminal trial, it necessarily follows as a consequence from the right of the jury to pass upon the law as well as the fact, in rendering their verdict. If, on the other hand, it be wrong for the jury to determine the law governing the case, against the judge, then the counsel ought not to be allowed to

persuade them to do wrong; so that, if the jury are bound to take the law implicitly from the court, then neither argument of counsel nor explanation by the court, other than to lay down the law, would be fitting or necessary. And if there is no distinction in this respect, between civil and criminal issues, the counsel should argue the points of law to the court, and the court give the law to the jury, to be taken by them without deliberating thereon. But the uniform practice of counsel to argue the law to the jury, which was never before questioned or denied in our judicial history, clearly affirms the right of the jury to pass upon and determine, by their verdict, the law that is to govern the issue which they are sworn well and truly to try.

The decision was made at October term 1846.

SHAW, C. J. This case comes before the court upon a bill of exceptions, and the question is, whether, in a criminal prosecution against the defendant for an alleged violation of the license laws, his counsel have a right to address the jury upon the questions of law embraced in the issue. The effect of the argument for the defendant, when analyzed, appears to be this; that in criminal prosecutions, it is within the legitimate right and proper duty of juries, to adjudicate and decide on questions of law as well as questions of fact; and that although the judge may instruct and direct them upon a question of law, and they fully comprehend and understand those directions, in their application to the facts of the case, yet that they are invested by law with a legitimate power and authority, if their judgments do not coincide with that of the judge, to disregard it, and decide in conformity with their own views of the law. If this were a correct view of the law, it would undoubtedly follow, as a necessary consequence, that in such appeal from the court to the jury, the counsel on both sides would have a right to argue the questions of law to the jury. But if this proposition is not correct, it does not follow, we think, as a necessary consequence, that the counsel cannot address the jury upon the law, under the direction of the court. They are, in our view, separate and distinct questions, to be separately considered.

We consider it a well settled principle and rule, lying at the foundation of jury trial, admitted and recognized ever since jury trial has been adopted as an established and settled mode of proceeding in courts of justice, that it is the proper province and duty of judges to consider and decide all questions of law which arise, and that the responsibility of a correct decision is placed finally on them ; that it is the proper province and duty of the jury, to weigh and consider evidence, and decide all questions of fact, and that the responsibility of a correct decision is placed upon them. And the safety, efficacy and purity of jury trial depend upon the steady maintenance and practical application of this principle. It would be alike a usurpation of authority and violation of duty, for a court, on a jury trial, to decide authoritatively on the questions of fact, and for the jury to decide ultimately and authoritatively upon the questions of law. And the obligations of each are of a like nature, being that of a high legal and moral obligation to the performance of an important duty, enforced and sanctioned by an oath.

This, as a general principle, is applicable alike to civil and criminal cases, though in both it must be varied in its practical application, according to the forms of proceeding and the mode in which the question arises. If the form of proceeding is such, that the law and the fact can be distinctly presented, then, after the fact is established, either by the pleadings or by a special verdict, the court decide the law and pronounce the judgment, without the further intervention of a jury ; as in case of a demurrer or special verdict. Indeed, the whole system of special pleading, which, though now disused in this Commonwealth by a recent statute, is intimately interwoven with the whole texture of the common law, was founded upon an apparently anxious desire of the common law so to separate questions of fact from questions of law, as to enable courts to pronounce on matter of law, leaving contested facts only to be put in issue, and to be tried and decided by the jury.

The whole doctrine of bills of exception, now in such gen-

eral and familiar use, both in civil and criminal proceedings, is founded upon the same great and leading idea. It presupposes that it is within the authority, and that it is the duty of the judge to instruct and direct the jury authoritatively, upon such questions of law as may seem to him to be material for the jury to understand and apply, in the issue to be tried; and he may also be required so to instruct upon any pertinent question of law within the issue, upon which either party may request him to instruct. The doctrine also assumes that the jury understand and follow such instruction in matter of law. This results from the consideration, that if such instruction be either given or refused, it is the duty of the judge to state it in a bill of exceptions, so that it may be placed on the record; and if the verdict is against the party who took the exception, and it appears, upon a revision of the point of law, that the decision is incorrect, either in giving or refusing such instruction, the verdict is set aside, as a matter of course. To this conclusion the law could come, only on the assumption that it was the right and duty of the court to instruct the jury in matter of law, that the jury understood it, and, as a matter of duty, were bound to follow it; so that, if the instruction was wrong, the law assumes, as a necessary legal consequence, that the verdict was wrong, and sets it aside. The law could only assume this, upon the strength of the well known and reasonable presumption, that all persons, in the absence of proof to the contrary, do that which it is their duty to do. It is presumed that the jury followed the instruction of the court in matter of law, because it was their duty so to do, and therefore, if the instruction was wrong, the verdict is wrong. But if the jury could rightly exercise their own judgment, and decide contrary to the direction of the court, as they unquestionably may do, in regard to questions of fact, no such presumption would follow; it would be left entirely in doubt, whether the jury had been misled or influenced by the incorrect direction in matter of law, and therefore this would alone be no sufficient ground for setting aside the verdict. But entirely otherwise it is in regard to a matter of

fact, in respect to which it is within the proper authority, and is the duty of the jury to exercise their judgment authoritatively and definitively. And should a judge express or intimate any opinion upon a question of fact, however incorrect it might be afterwards found to be, upon a revision by a higher court, it would not necessarily afford a ground for a new trial; for, it not being the duty of the jury to follow it, there would be no presumption that they had followed it, and therefore it would not, of itself, show conclusively that the verdict was wrong.

And it is to be considered that this doctrine and practice, in regard to exceptions, apply as well to criminal as to civil trials; at least so far as they can operate for the protection and security of parties accused. Indeed, so solicitous has been the legislature of this Commonwealth, that all persons put on trial for alleged offences shall have the full benefit of the opinion and judgment of the court upon all questions of law, and a revision thereof by the court of last resort, on suitable occasions, that it has specially provided that if, upon the trial of any person who shall be convicted, any question of law shall arise, which, in the opinion of the presiding judge, shall be so important or so doubtful as to require the decision of the supreme judicial court, although such person has no counsel to defend him, or the counsel have not seen fit to take the exception, the judge may, on his own sense of propriety and duty, reserve it, and thereupon all further proceedings in that court shall be stayed. Rev. Sts. *c.* 138, § 12.

This leads to another view of this subject, which seems to us to be of great importance, and this is, that every citizen of the Commonwealth has a right to the benefit and protection of the law. Whilst he is liable to its penalties, he has a right to be tried by law, and he is entitled to the authoritative declaration and application of the law to his case, as his best and highest protection. It is manifestly of great importance, in order to effect such protection of the rights of parties, that the laws to which they are amenable shall be

fixed and permanent, impartially applied to all persons and cases alike, and not fluctuating and variable. This result seems to have been looked to, with great anxiety, by the framers of our constitution, in the declaration of rights. Art. 10. " Each individual of the society has a right to be protected by it, in the enjoyment of his life, liberty and property, according to standing laws." Art. 29. " It is essential to the preservation of the rights of every individual, his life, liberty, property and character, that there be an impartial interpretation of the laws and administration of justice. It is the right of every citizen to be tried by judges as free, impartial and independent, as the lot of humanity will admit." Art. 13. " In criminal prosecutions, the verification of facts in the vicinity where they happen is one of the greatest securities of the life, liberty and property of the citizen." These seem to be trite, familiar truths ; but the declaration of rights itself declares, Art. 18, that a frequent recurrence to them is absolutely necessary to preserve the advantages of liberty, and to maintain a free government And it requires, both of lawgivers and magistrates, an exact and constant observance of them, in the formation and execution of the laws necessary for the good administration of the Commonwealth.

These provisions manifest an ardent desire and a wise determination, as far as the imperfection of all human things would allow, to make the law paramount and supreme over all the powers and influences of will or passion, of interest or prejudice, whether of the few or of the many ; to render it stable, impartial and equal in its operation, over all who might require its protection or fall under its animadversion. But it appears to us that the principle contended for would be adverse to all these objects. If a jury has a legitimate authority to decide upon all questions of law arising in the cases before them, and that contrary to the instruction of the judge, in cases where such direction of the judge may be supposed adverse to the views of the law relied on by the accused or his counsel, they would have the same power to

decide any question of law, against the opinion and instruction of the judge, when such opinion is in favor of the accused, and find him guilty, where the judge should direct the jury that those facts which the evidence conduces to prove, if proved to their satisfaction, would not warrant a conviction. A case may be supposed, at least for the purpose of illustration, where a high popular excitement should arise and become general, in which large bodies of persons might come to be actuated by feelings of honest but mistaken indignation against some supposed wrong, and earnest in the pursuit of the supposed interests of philanthropy; or perhaps numbers may be influenced by more base, interested and vindictive passions. Under these circumstances, a grand jury, having, as the case supposes, a legitimate and rightful authority to decide on questions of law, contrary to the instructions and charge of the judge, might return an indictment; a traverse jury, in their turn, might convict upon it, though the court before whom it is tried should give them such directions, in point of law, that if they understood and followed them they must acquit the accused. But the case supposes that the law may be rightfully interpreted by a jury which may shift at every trial. What then becomes of the security which every citizen is entitled to, by a steady and uniform, as well as impartial interpretation of the laws and administration of justice, by judges as free, impartial and independent as the lot of humanity will admit? The purpose and intent of these provisions, we think, are indicated by the last article of the declaration of rights, which, after having contemplated a distribution of the powers of sovereignty into legislative, executive and judicial departments, and declared that neither should execute the powers assigned to the other, points out the ultimate object, in these em phatic words : " to the end it may be a government of laws and not of men."

These provisions were adopted as the fundamental laws upon which the government was to be administered , they have a manifest reference to a favorite maxim of the friends

of civil liberty, regulated by law, that high powers can be most safely intrusted to public officers, by placing them, when they are capable of distribution, in different departments, to be exercised by concurrent action, so that each shall keep within its own sphere, and the one be a check upon the other. They also regarded another favorite axiom, that facts could be best verified and tried by an impartial jury, drawn from the vicinity, who should consider and weigh the evidence, and thereupon find and declare the facts; and that a steady, uniform interpretation of the laws and administration of justice could best be secured by the establishment of permanent judicial tribunals, as an independent department of government, to whom the judicial power should be intrusted, and who should be rendered, as far as practicable, free and independent.

Whether, therefore, we consider the rules of the common law, or the constitution and law of this Commonwealth, we are of opinion that it is the proper province and duty of the court to expound and declare the law, and that it is the proper province and duty of the jury to inquire into the facts by such competent evidence as may be laid before them, according to the rules of law for the investigation of truth, which may be declared to them by the court, and find, and ultimately decide, on the facts. It may be added that it is the more necessary to adhere to this rule, in the administration of American law, because in these States the government is conducted according to written constitutions, in which the powers even of the legislature are limited and defined; and it is therefore within the province, and it is made the duty of the judicial department, on proper occasions, to decide, not only what is the true interpretation and legal effect of a legislative enactment, but also whether an act, passed with all the forms of legislation, is within the just limits of legislative power, and therefore whether it is constitutional and valid.

But though this rule of law be considered as well established, yet, as we have already said, there are various modes,

**24 \***

in which it must be practically applied, according to the nature of the proceedings in which it arises. Sometimes, even in criminal cases, the question of law arises upon the record, where there is no controverted fact, and where the court decide definitively, as in case of a demurrer, a motion to quash an indictment, a motion in arrest of judgment, on a bill of exceptions, and the like. But it will most frequently arise, in a trial before a jury, upon the question of guilty or not guilty. In every charge of crime, there must be a question of law and a question of fact, to wit, is there any such rule of law as that on which the indictment is founded? Has the defendant done the acts charged in the indictment, which amount to a violation of such rule of law, and constitute the offence charged? The decision of both of these is necessarily involved in a verdict of " guilty " or " not guilty." The former affirms that there is such a law, and that the accused has violated it ; the latter affirms, either that there is no such rule of law, or, if there is, that the accused has not done any acts which amount to a violation of it.

How then are these two questions to be decided and combined into one, if one is to be referred exclusively to the court, and the other to the jury ? The jury may, in any case, if they think fit, find a special verdict ; that is, they may find and report, in the form of a verdict, all the material facts, which are proved to their satisfaction, and call upon the court to decide whether, in point of law, the accused is guilty or not guilty upon the facts thus found. But this is the privilege of the jury, which they may exercise or not, and in no case are they bound to find a special verdict. *Mayor, &c.* v. *Clark*, 3 Adolph. & Ellis, 506. The question then recurs, in case the jury return a general verdict, how is the law to be decided by the court, when, as we have seen, it is to be declared by the jury, as involved in the general verdict. As both questions are involved in the verdict, the appearance on the record is that both are decided by the jury, because both are declared by them. But this is in appearance only, and can scarcely mislead those who are

acquainted with the practice of courts of justice in criminal trials, though it has sometimes led to the argument, that because they must, in a general verdict, declare the rule of law on which it rests, they have a power to pass upon it, and therefore a rightful authority to decide it. But we think the course of proceeding, in such case, is very clear, is quite consistent with the principle before stated, and is constantly practised upon in such trials. It is the only and proper course which can be adopted, in order that the law may be carried into effect, in its spirit and integrity. That course is, for the judge to direct the jury hypothetically, to declare what the law is, with its exceptions and qualifications, to explain it, and to state the reasons and grounds of it, if, in his judgment, such explanation is necessary to make it clearly intelligible to the minds of men of good judgment and common experience, but without legal knowledge and skill ; then to state to the jury, that if certain facts neces sary to constitute the offence, and which there is evidence tending to prove, are proved to their satisfaction, they are to find the defendant guilty ; but if certain material facts, which there is some evidence tending to prove, are not proved to their satisfaction, they are to find the defendant not guilty.

This is the only mode in which a trial can be conducted, since the jury are not obliged to find a special verdict, and the law confides in the intelligence and integrity of the jury, to understand the rules of law as prescribed to them by the court, to weigh and examine the evidence laid before them, and honestly, according to the conviction of their minds to find whether they are true, and whether such facts, found true by them, do or do not bring the party accused within the operation of the law, as thus prescribed to them, and to find a verdict of guilty or not guilty accordingly.

But in thus conducting a jury trial in a criminal case, with a view to the return of a general verdict, it is obvious that the whole matter of law as well as of fact must be stated and explained to the jury, so that they may fully

understand and apply it to the facts ; because, as we have seen, in the form of the general verdict, they do declare the law as well as the fact. For this purpose, it seems to be necessary, and in our State it is the usual practice, for the parties respectively, by their counsel, to state the law to the jury, in the presence, and subject to the ultimate direction of the judge; because, unless the jury understand the rule of law, with its exceptions, limits and qualifications, they cannot know how to apply the evidence, and determine the truth of the material facts necessary to bring the case of the accused within it. In thus presenting their respective views of the law to the jury, under the direction of the court, for the better information of both the judge and jury, great latitude has been allowed in the practice of this Commonwealth, and counsel have been permitted to state and enforce their views of the law, especially in capital cases, by definitions, and cases from such works of established authority as the court may approve. In this, great latitude has been allowed, in tenderness to the accused, and a liberal confidence reposed in counsel called to defend the accused in the hour of his trial. But such an address, whether it be upon the matter of fact or the matter of law, and whether in form it be directed to the court or jury, is in legal effect and actual operation an address to both ; not because they have not several duties to perform, and distinct questions to pass upon, but because it is one trial, carried on at once before court and jury, in which the judge must have a clear comprehension of the nature and scope of the evidence, conducing to the proof of facts, which may or may not render the accused amenable to the law, in order that he may give such directions in matter of law as the state of the evidence may require ; and the jury must have a clear comprehension of the rules of law, in order to determine whether the facts proved bring the accused within them ; and because the minds of both judge and jury, acting in their respective departments, must result in that general verdict of acquittal or conviction, which is the appropriate determination of the

cause. Considering the latitude which has been allowed in this Commonwealth, by a long course of practice, and the difficulty of drawing an exact line of distinction between that full statement and exposition of his views of the law, which counsel may properly make in a general address to the court and jury, upon the questions embraced in the issue, and involved in a general verdict, and an address to the jury separately upon questions of law, we are of opinion that a party may by his counsel address the jury upon questions of law, subject to the superintending and controlling power of the court to decide questions of law, by directions to the jury, which it is their duty to follow. In ordinary cases, such directions to the jury, upon the questions arising in the cause, are not given until the parties, by their counsel, have submitted their respective views of the law and the facts, in an argument to the court and jury.

On the whole subject, the views of the court may be summarily expressed in the following propositions :

That in all criminal cases, it is competent for the jury, if they see fit, to decide upon all questions of fact embraced in the issue, and to refer the law arising thereon to the court, in the form of a special verdict.

But it is optional with the jury thus to return a special verdict or not, and it is within their legitimate province and power to return a general verdict, if they see fit.

In thus rendering a general verdict, the jury must necessarily pass upon the whole issue, compounded of the law and of the fact, and they may thus incidentally pass on questions of law.

In forming and returning such general verdict, it is within the legitimate authority and power of the jury to decide definitively upon all questions of fact involved in the issue, according to their judgment, upon the force and effect of the competent evidence laid before them ; and if in the progress of the trial, or in the summing up and charge to the jury, the court should express or intimate any opinion upon any such question of fact, it is within the legitimate province

of the jury to revise, reconsider, and decide contrary to such opinion, if, in their judgment, it is not correct and warranted by the evidence.

But it is the duty of the court to instruct the jury on all questions of law which appear to arise in the cause, and also upon all questions, pertinent to the issue, upon which either party may request the direction of the court, upon matters of law. And it is the duty of the jury to receive the law from the court, and to conform their judgment and decision to such instructions, as far as they understand them, in applying the law to the facts to be found by them; and it is not within the legitimate province of the jury to revise, reconsider, or decide contrary to such opinion or direction of the court in matter of law. To this duty jurors are bound by a strong social and moral obligation, enforced by the sanction of an oath, to the same extent, and in the same manner, as they are conscientiously bound to decide all questions of fact according to the evidence.

It is no valid objection to this view of the duties of jurors, that they are not amenable to any legal prosecution for a wrong decision in any matter of law; it may arise from an honest mistake of judgment, in their apprehension of the rules and principles of law, as laid down by the court, especially in perplexed and complicated cases, or from a mistake of judgment in applying them honestly to the facts proved. The same reason applies to the decisions of juries upon questions of fact, clearly within their legitimate powers; they are not punishable for deciding wrong. The law vests in them the power to judge, and it will presume that they judge honestly, even though there may be reason to apprehend that they judge erroneously; they cannot therefore be held responsible for any such decision, unless upon evidence which clearly establishes proof of corruption, or other wilful violation of duty.

It is within the legitimate power, and is the duty of the court, to superintend the course of the trial; to decide upon the admission and rejection of evidence; to decide upon the

use of any books, papers, documents, cases or works of supposed authority, which may be offered upon either side ; to decide upon all collateral and incidental proceedings; and to confine parties and counsel to the matters within the issue.

As the jury have a legitimate power to return a general verdict, and in that case must pass upon the whole issue, this court are of opinion that the defendant has a right by himself or his counsel to address the jury, under the general superintendence of the court, upon all the material questions involved in the issue, and to this extent, and in this connexion, to address the jury upon such questions of law as come within the issue to be tried. Such address to the jury, upon questions of law embraced in the issue, by the defendant or his counsel, is warranted by the long practice of the courts in this Commonwealth in criminal cases, in which it is within the established authority of a jury, if they see fit, to return a general verdict, embracing the entire issue of law and fact.

As it appears by the bill of exceptions, that the defendant's counsel were prohibited from addressing the jury upon questions of law embraced in the issue, the court are of opinion that the verdict ought to be set aside ; and the same is set aside, and a new trial granted, to be had at the bar of the court of common pleas.